# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

AARON DALE FULMORE,

     Plaintiff,

v.                                                                    Case No. 8:12-CV-1705-T-30EAJ

ANDRE LEIGH,[1]

     Defendant.

_____/

## ORDER

Plaintiff, an inmate in the Florida Department of Corrections proceeding *pro se*, has filed an amended civil rights complaint under 42 U.S.C. § 1983 (Dkt. 7).  Before the Court are Plaintiff's Motion for Summary Judgment (Dkt. 30), Defendant's Motion for Summary Judgment (Dkt. 35), Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 40), Plaintiff's Amended Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 43), and Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 37).  Upon review, the Court finds that Defendant is entitled to summary judgment in his favor.

---

[1]Defendant Andre Leigh states that he was incorrectly identified in the complaint as "Willis Andre." Therefore, the Court will refer to Defendant as Andre Leigh.  However, some of the record documentation cited to or quoted from in this order refers to Defendant as "Willis Andre" or "c/o Andre."

## PROCEDURAL HISTORY

Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 (Dkt. 1), alleging violations of his First and Eighth Amendment rights concerning events at Zephyrhills Correctional Institution ("ZCI").  He named as defendants Andre Leigh, Gustavo Mazorra, and Leigh Platt.  Plaintiff alleged that Defendant Leigh, a correctional officer, retaliated against Plaintiff for filing grievances against him and that Defendant Mazorra, the former warden at ZCI, and Defendant Platt, the assistant warden at ZCI, failed to address this matter after Plaintiff informed them of Defendant Leigh's allegedly retaliatory actions.   Plaintiff sought compensatory and punitive damages.

After conducting a preliminary screening of the complaint under 28 U.S.C. § 1915A, the Court determined that the facts in the complaint, when taken in the light most favorable to Plaintiff, arguably stated a colorable claim for relief under the First and Eighth Amendments as to Defendant Leigh.  (Dkt. 6, pp. 2, 5.)  The Court found that Plaintiff's request for compensatory and punitive damages was barred as a matter of law.  (Id., p. 3.)  The Court also dismissed Plaintiff's request that the Department of Corrections terminate Defendant Leigh's employment.  (Id.)  Further, the Court found that Plaintiff failed to state a First or Eighth Amendment violation against Defendants Mazorra and Platt.  (Id., p. 6.)  Accordingly, the Court dismissed the complaint without prejudice to Plaintiff filing an amended complaint on or before November 13, 2012. (Id., p. 7.) Plaintiff was instructed that any claims raised in his amended complaint must relate to the claims asserted in his original complaint.  (Id.)

Plaintiff timely filed his amended complaint regarding Defendant Andre Leigh ("Defendant").  Defendant waived filing an answer pursuant to 42 U.S.C. § 1997e(g) and asserted two affirmative defenses: Plaintiff failed to exhaust administrative remedies, and Plaintiff may not recover damages against Defendant in his official capacity.  (See Dkt. 26.) The Court entered an order providing deadlines for the parties to complete discovery and file motions for summary judgment (Dkt. 27).  Each party has moved for summary judgment.[2]

## FACTUAL BACKGROUND

Plaintiff asserts that he and Defendant had two interactions in 2010 that initiated the events leading to this § 1983 claim.  In the first instance, Plaintiff states that Defendant refused to give Plaintiff a pass to go the legal mail area but that other prison officials instructed Defendant to give Plaintiff the pass.  Plaintiff states that, on another occasion, Defendant approached Plaintiff in the chapel and asked whether Plaintiff had a pass to be there.  Plaintiff asserts that he told Defendant he did not need a pass to be in the chapel.

Plaintiff testified at his deposition that, following these events, his security grade was lowered and he lost gain time.  (Dkt. 35-1, p. 8.)  Plaintiff claims that when he became aware of this, he also learned that he "ha[d] two write ups from [Defendant.]" (Id.)  On June 11, 2010, Plaintiff wrote an informal grievance concerning the unsatisfactory security grade,

---

[2]In his initial response to Defendant's motion for summary judgment, Plaintiff asks the Court to require Defendant to provide him with a copy of his deposition for his "personal records and legal purposes."  (Dkt. 40, p. 2.)  Because Plaintiff has not stated a specific reason that he needs the deposition or shown an entitlement to a copy free of charge from Defendant, his request is denied.

asking that it be corrected. (Dkt. 1, p. 22.)[3] Apparently referring to the "write ups," Plaintiff noted in this grievance that "both warnings were issued by c/o Andre." (Id.) Plaintiff further stated his concern that Defendant's actions were "vindictive" and were "vengeance" following the incidents concerning the legal mail pass and the chapel. (Id.) Plaintiff's grievance was approved and the June 21, 2010 written response to the grievance informed Plaintiff that his security rating would be changed from unsatisfactory to above satisfactory. (Id.) Plaintiff also indicates that his gain time was restored. (Dkt. 35-1, p. 9.)

Following the approval of his June 11, 2010 grievance, Plaintiff filed three more grievances with the Department of Corrections regarding Defendant. First, he filed an informal grievance on August 8, 2010, regarding "the ongoing harassment by c/o Andre" and stating that "as of 8-7-10 this officer continues to verbally confront me without warrant while assigned to D-2." (Dkt. 1, p. 23.) He alleged that other officers, whom he did not name, informed him that Defendant had a "very vindictive nature." (Id.) The grievance was returned on August 12, 2010. (Id.) The written response stated that Defendant was questioned but denied harassing Plaintiff. (Id.) The record indicates that Plaintiff did not take further action in regard to this grievance. Plaintiff acknowledged in his testimony that he did not believe he appealed this grievance. (Dkt. 35-1, pp. 10, 11.)

---

[3]The grievances were initially attached to Plaintiff's original complaint (Dkt. 1). They were subsequently attached again to Defendant's motion for summary judgment (Dkt. 35) and Plaintiff's response (Dkt. 40) and amended response (Dkt. 43) to Defendant's motion for summary judgment. For clarity, the Court refers to the grievances as attached to the original complaint (Dkt. 1).

Next, Plaintiff filed an informal grievance on May 20, 2011.  In it, he alleged that on April 2, 2011, Defendant said in the dorm that he was getting rid of all the "snitches."  (Dkt. 1, p. 12.)  Plaintiff further asserted that he had "endured countless shakedowns, unwarranted verbal confrontations, and harassment in retaliation by this officer for my writing 'several' complaints against him with no end in site [sic]."  (Id.)  He also expressed his fear that contraband would be placed in his cell or that he would be written up on a "bogus kite."[4]  (Id.)

The written response to this grievance, dated June 6, 2011, informed Plaintiff that his request for administrative remedy was considered approved because the matter was already referred to the Inspector General's Office.  (Id., p. 13.)  The information before the Court concerning the Inspector General's investigation reflects that Plaintiff wrote to that Office on August 31, 2011, and September 14, 2011.  (Id., pp. 16, 17.)  He stated in his September 14, 2011 correspondence that two other correctional officers, Smith and Tameka Freeman, wanted to give statements that they refused Defendant's attempts to "solicit" their help in "targeting and harassing" Plaintiff.  (Id., p. 17.)  The September 19, 2011 response to this correspondence informed Plaintiff that the issue was referred to "Zephyrhills administration on 9/12/11 for appropriate actions."  (Id.)  Plaintiff sent additional correspondence to the Inspector General's Office on October 18, 2011, and a complaint to that Office on January 13, 2012.  (Id., pp. 18, 19.)

---

[4]Plaintiff testified that a "bogus kite" is essentially a falsified complaint about an inmate.  (See Dkt. 35-1, pp. 11-12.)

Plaintiff's third grievance was directed to the Secretary of the Department of Corrections on June 6, 2011.  (Id., p. 14.)  Plaintiff alleged that Defendant's harassment began in February of 2010 when Defendant refused to give him a legal mail pass and that he had been "targeted and harassed constantly by c/o Andre" since then.  (Id.)  Plaintiff also alleged that Defendant "boldly stated to me that I had no idea who he was dealing with, stating that he has the power to do anything he pleases to me and that I will always lost against him."  (Id.)  He further alleged that Defendant targeted him with "countless shakedowns and harassments of unwarranted verbal confrontations."  (Id.)  Plaintiff stated that "this is very stressful for me from a mental and emotional standpoint, and to be called and labeled a 'snitch' by this officer has created a hostile environment for me." (Id., p. 15.) Plaintiff asserted that Defendant bragged to another unnamed officer about harassing Plaintiff and shaking him down, that this other officer encouraged Plaintiff to write grievances.  (Id., p. 14.)

He repeated his claim that two other officers would give statements that Defendant asked them to help harass Plaintiff and again stated his concern that he would be subject to planted contraband or bogus kites. (Id., p. 15.)  Although the written response to this grievance does not appear to be included in the record before the Court, Plaintiff testified during his deposition that he believed it was returned because it addressed more than one issue, and further stated that did not take further action following the return of this grievance. (Dkt. 35-1, pp. 15-16.)

## PLAINTIFF'S § 1983 CLAIMS

Plaintiff alleges in his § 1983 claim that Defendant retaliated against him for filing grievances, thus violating Plaintiff's First and Eighth Amendment rights.  First, Plaintiff contends that Defendant retaliated against him from January of 2010 until January of 2012 by the "countless trashing of [Plaintiff's] locker, his bunk, and his Islamic materials and Quran" and through "countless shakedowns, the trashing of his locker, his bunk, and his religious materials including the Petitioner's holy Quran." (Dkt. 7, p. 5.)  Plaintiff asserts that this led him to experience sleep deprivation and significant weight loss.  (Id., pp. 5-6.)  He states that his weight dropped from 176 pounds to 148 pounds, necessitating his placement on a "medical '4000' calorie diet" to regain this weight.  (Id., p. 6.)

Second, Plaintiff contends that on several occasions from April of 2010 to January 20, 2012, Defendant made "open statements" to other prisoners identifying Plaintiff as a "snitch."  (Id., pp. 5, 6.)  Plaintiff alleges that, following these statements, other prisoners "confront[ed]" him, informed him that Defendant said he was a snitch, and made statements that "suggested" they might inflict bodily harm on him.  (Id., p. 6.)  As a result of these statements, Plaintiff asserts, he suffered mental and emotional stress because he lived in a hostile environment where bodily harm was a "strong possibility."  (Id.)

In his § 1983 claim, Plaintiff seeks nominal damages against Defendant, including the cost of his filing fee, for "targeting and harassing [Plaintiff] as a form of retaliation for [Plaintiff] filing grievances against him." (Id., pp. 6-7.)[5]

## STANDARD OF REVIEW

### 1.   Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Support for the movant's assertion may be provided by citing to portions of the record, including depositions, documents, affidavits or declarations or other material, or by showing that an opposing party cannot produce admissible evidence to support a fact.  *See* Fed. R. Civ. P. 56(c).  An issue is genuine if the evidence would permit a reasonable jury to return a verdict for the non-moving party.  *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).  A fact is material if it is a legal element of the claim may affect the outcome of the litigation.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted).

It is the moving party's burden to show that the record reflects there are no genuine issues of material fact to be determined at trial.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d

---

[5]In his motion for summary judgment, Plaintiff attempts to seek nominal, punitive, and compensatory damages and attempts to raise claims against Defendant in his official and individual capacities.  (Dkt. 30, p. 7.) Claims against the Defendant in his official capacity are barred by the Eleventh Amendment to the United States Constitution.

1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If

the moving party does so, the opposing party must allege specific facts that demonstrate the

existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

(1986).  When reviewing a motion for summary judgment, the court must view the evidence

in the light most favorable to the non-moving party, and the documents must show that the

non-moving party is not entitled to relief under any set of facts alleged in the complaint.  *See*

*generally Allen*, 121 F.3d 642.  However, the non-movant must present "affirmative evidence

to defeat a properly supported motion for summary judgment" and conclusory allegations are

insufficient to do so.  *Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 949 (11th Cir. 1993) (citations

omitted).  In evaluating a summary judgment claim, a  court "must decide 'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law.'" *Hickson*, 357 F.3d at 1260

(quoting *Anderson*, 477 U.S. at 251, 252 (1986)).

**2.      First Amendment Retaliation Claims**

Filing a grievance regarding the conditions of imprisonment is an exercise of an

inmate's First Amendment rights.  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).

"First Amendment rights to free speech and to petition the government for a redress of

grievances are violated when a prisoner is punished for filing a grievance concerning the

conditions of his imprisonment."  *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)

(quoting *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)).   "To establish a First

Amendment retaliation claim, a prisoner need not allege the violation of an additional

separate and distinct constitutional right; instead, the core of the claim is that the prisoner is being retaliated against for exercising his right to free speech." *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011) (citing *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)).

To succeed on a claim alleging retaliation in a § 1983 action, an inmate must show that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith*, 532 F.3d at 1276 (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

An essential element of a First Amendment retaliation claim is the existence of a retaliatory motive on the official's behalf. Specifically, "[t]o succeed in a section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision." *Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998) (citations omitted). Therefore, to survive a claim for summary judgment, Plaintiff must make a showing sufficient to permit a reasonable jury to find that his filing of grievances was a substantial or motivating factor behind Defendant's actions.

**3.     Eighth Amendment Claims**

Prison conditions violate the Eighth Amendment violation when they involve the wanton and unnecessary infliction of pain. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). "The Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force,

and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010) (citing *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008)).   Each of these three possible claims "requires a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

When challenging specific conditions of confinement, to make required objective showing, an inmate must demonstrate "extreme deprivations." *Thomas*, 614 F.3d at 1304 (citing *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)).   In other words, the condition must be "sufficiently serious to violate the Eighth Amendment." *Chandler*, 379 F.3d at 1289 (citing *Hudson*, 503 U.S. at 8). To make the necessary subjective showing, an inmate must demonstrate "deliberate indifference" of the official. *Thomas*, 614 F.3d at 1304 (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)).   An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Chandler*, 379 F.3d at 1289-90 (quoting *Farmer*, 511 U.S. at 837).

## MOTIONS FOR SUMMARY JUDGMENT

**1.    Plaintiff's Motion for Summary Judgment**

In seeking summary judgment, Plaintiff merely asserts that Defendant has retaliated against him for filing grievances and reiterates the factual background of this matter as well as the claims raised in his amended complaint.  He has offered no argument as to why summary judgment should be granted and fails to assert or show that there is no genuine issue of material fact in this matter.  In his response, Defendant asserts that Plaintiff's motion fails to comply with the portions of Rule 56 requiring a party to identify the claims for which he seeks summary judgment and to support his assertions by citing to specific parts of the record.  *See* Fed. R. Civ. P. 56(a), (c).  As Plaintiff has not met his burden of showing that summary judgment is proper, his motion for summary judgment is denied.

**2.    Defendant's Motion for Summary Judgment**

**A.    Failure to Exhaust Administrative Remedies**

Defendant first asserts that summary judgment must be granted because Plaintiff has not exhausted administrative remedies within the Department of Corrections for the grievances he filed concerning Defendant's alleged retaliation.  Defendant is correct that exhaustion of administrative remedies is required prior to bringing a § 1983 action; 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Therefore, "when a state provides a grievance procedure for its prisoners ... an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)).   To properly exhaust administrative remedies, prisoners must "complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

Furthermore, the exhaustion of administrative remedies is "a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment." *Tilus v. Kelly*, 510 Fed.Appx. 864, 865 (11th Cir. 2003) (citing *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008)).   "Under such circumstances, "the district court may consider facts outside of the pleadings and resolve factual disputes so long as it does not decide the merits of the case and so long as it permits the parties a sufficient opportunity to develop the record." *Tilus*, 510 Fed.Appx. at 865 (citing *Bryant*, 530 F.3d at 1376).   The record reflects that the parties were given the opportunity to develop the record and conduct discovery.

The Florida Administrative Code sets forth procedures for grievances by inmates in the Florida Department of Corrections.   Typically, an inmate begins this process by filing an informal grievance within a reasonable time after the incident in question.   Fla. Admin. Code r. 33-103.005 and 33-103.011(1)(a).   If an informal grievance is not approved, the inmate has the option to file a formal grievance at the institutional level.   Fla. Admin. Code r. 33-

103.006.   If a formal grievance is rejected, the inmate may then file a Request for Administrative Remedy or Appeal to the Office of the Secretary of the Department of Corrections.  Fla. Admin. Code r. 33-103.007.  Taking these actions after the rejection of a grievance may be referred to as an appeal.   There are limited exceptions to starting the grievance process at the informal level.  Certain allegations may be brought for the first time in a formal grievance at the institutional level, or by filing a direct grievance with the Office of the Secretary of the Department of Corrections.  Fla. Admin. Code r. 33-103.005(1), 33-103.006(3), and 33-103.007(6).

Defendant asserts that Plaintiff failed to exhaust administrative remedies because he did not complete the grievance review process and because he did not grieve the claims he now sets forth in this § 1983 cliam.

### i.     Failure to Exhaust Administrative Remedies for not Completing Appellate Process for Grievances

Defendant argues that Plaintiff has not exhausted administrative remedies in part because he failed to appeal his grievances and complete the grievance review process.  Defendant maintains that, to properly exhaust administrative remedies, Plaintiff was required to appeal the returns of his grievances of August 8, 2010, and June 6, 2011.

Plaintiff's August 8, 2010 grievance was an informal grievance in accordance wtih Fla. Admin. Code r. 33-103.005.  There is no indication in the record that Plaintiff took further action after this grievance was considered and returned.  To take the next step in the administrative review process and appeal, Plaintiff would have had to file a formal grievance

pursuant to Fla. Admin. Code r. 33-103.006.  Plaintiff testified that he did not believe he appealed this grievance.  (Dkt. 35-1, p. 11.)  Thus, Plaintiff did not exhaust administrative remedies as to his August 8, 2010 informal grievance.

Plaintiff's June 6, 2011 grievance was filed directly with the Office of the Secretary of the Department of Corrections.  In most situations, this would be the third possible step in the grievance process following the filing and rejection of an informal grievance, and the denial of an appeal presented through a formal grievance.  By initiating this grievance with the Secretary of the Department of Corrections, Plaintiff failed to follow the channels to seek administrative remedies that are set forth in the Florida Administrative Code.[6]  Additionally, Plaintiff testified that he did not take any further action when his June 6, 2011 grievance was returned.  (Dkt. 35-1, pp. 15-16.)  Plaintiff explained that his "whole agenda" was to make the matters known and the grievance "served a purpose for [him]," that the investigation stemming from his May 20, 2011 grievance was ongoing, and that he did not "follow through" with further action regarding the June 6, 2011 grievance.  (Id., pp. 15, 16.)

Plaintiff's testimony supports the finding that he failed to follow the established grievance process.  To exhaust administrative remedies, prisoners must follow grievance procedures "in accordance with the applicable procedural rules."  *Jones*, 549 U.S. at 218. Plaintiff did not initiate or complete the administrative review process in accordance with the

---

[6]Plaintiff did not assert that the matters raised in this grievance were among those that may be initially brought in a direct grievance under Fla. Admin. Code r. 33-103.007(6).  Furthermore, if he intended to do so, he was required to state this at the beginning of his grievance and state a reason for bypassing the informal and formal grievance steps.  Fla. Admin. Code r. 33-103.007(6)(a).  He did not provide this information.  (See Dkt. 1, p. 14.)

Florida Administrative Code when he filed this grievance directly with the Secretary of the Department of Corrections, rather than initiating a new informal grievance in accordance with established procedures.  Thus, Plaintiff did not exhaust administrative remedies as to the issues raised in his June 6, 2011 grievance.

Plaintiff's May 20, 2011 grievance, which was an informal grievance raised under Fla. Admin. Code r. 33-103.005, was approved.  Specifically, the written response informed Plaintiff that "[t]his issue has already been addressed by the Inspector General's Office.  As action has been initiated, you may consider your request for administrative remedies approved from that standpoint." (Dkt. 1, p. 13.)  Plaintiff was not required to appeal or take further action on this grievance once it had been approved in order to exhaust administrative remedies. While the relevant provisions of the Florida Administrative Code address further steps when a grievance is rejected, they do not contain similar provisions requiring inmates to undertake additional action upon approval of a grievance in order to complete the review process.

Plaintiff did not fail to exhaust administrative remedies by not appealing the response to his May 20, 2011 grievance.  Consequently, summary judgment is not appropriate on this basis as to the matters raised in that grievance.  However, because Plaintiff did not exhaust administrative remedies as to his grievances of August 8, 2010, and June 6, 2011, he did not fulfill this prerequisite to filing his § 1983 action.  Defendant's motion for summary judgment is granted on the basis of failure to exhaust administrative remedies as to the claims

addressed in those grievances.  The Court will consider further the issues raised in Plaintiff's May 20, 2011 grievance.

### ii. Failure to Exhaust Administrative Remedies by not Raising Claims in Grievances with the Department of Corrections

Defendant also asserts that Plaintiff did not exhaust administrative remedies because he did not raise all of the arguments now presented in his § 1983 claim in his grievances with the Department of Corrections.  Specifically, Defendant contends that Plaintiff's grievances did not allege retaliatory "shakedowns" or the "trashing" of Plaintiff's property, or provide the dates of Defendant's retaliatory actions with more specificity than the two-year window of January of 2010 to January of 2012.  Defendant contends that because Plaintiff failed to grieve the issues addressed in his amended complaint, he failed to exhaust administrative remedies.

In evaluating this argument, the Court will consider whether Plaintiff addressed his § 1983 claims in his May 20, 2011 grievance.  The record supports Defendant's contention that this grievance did not address the "trashing" of Plaintiff's property or otherwise allege that Defendant mishandled Plaintiff's property or belongings.  Additionally, the Court concludes that Plaintiff did not address his claims about being called a "snitch" in this grievance. While Plaintiff asserted that, on April 2, 2011, Defendant said he was getting rid of all the "snitches," Plaintiff did not claim in this grievance that Defendant specifically called him a snitch or referred to him as a snitch in front of other inmates.  (See Dkt. 1, p. 12.)  Nor did he allege that any such statements led other inmates to threaten him.  (See Id.)

Therefore, Plaintiff's claims of retaliation based on the "trashing" or mishandling of his property and Defendant calling Plaintiff a "snitch" were not grieved in accordance with the procedures set forth in the Florida Administrative Code.

However, Plaintiff did state in his May 20, 2011 informal grievance that he endured "shakedowns" by Defendant in retaliation for Plaintiff's grievances.  (Id.)  But Plaintiff did not assert in his grievance, as he does in his § 1983 claim, that the stress from Defendant's alleged retaliation led to his sleep deprivation and weight loss.  (See Id.)  Ultimately, the sole § 1983 claim that Plaintiff raised in his grievance for which he exhausted administrative remedies is that Plaintiff retaliated against him for filing grievances by subjecting him to shakedowns. Therefore, this narrow issue survives summary judgment on the basis of failure to exhaust administrative remedies and will be considered further.

### B.    Merits of Plaintiff's Claims

Defendant also asserts that Plaintiff's claim for retaliation must fail at the summary judgment stage.   Defendant argues that "Plaintiff's general allegations of 'countless shakedowns' over a two year period are insufficient to survive summary judgment" in that Plaintiff has failed to present anything beyond "general attacks" on Defendant's motivations.[7]

---

[7] Defendant further asserts that the record reflects that Plaintiff was not searched "excessively." He points to records from ZCI indicating that Defendant only searched Plaintiff once from April 2010 to September of 2010. (Dkt. 35-4.)  Defendant also depends on the sworn declaration of inmate Ronald Beasley, who stated that when he shared a cell with Plaintiff from approximately March 2, 2010, to September 20, 2010, he never witnessed Defendant "perform a shakedown of [Plaintiff]'s property" and he never saw Plaintiff's "property and bunk trashed or thrown about the cell."  (Dkt. 35-3.)  The records on which Defendant relies do not account for the complete time frame in which Plaintiff alleges that Defendant retaliated against him.  This period spans from January of 2010 to January of 2012.  Thus, Defendant's records do not address the period of September of 2010 until May 20, 2011, when Plaintiff wrote his exhausted grievance.

The Court will consider Plaintiff's claim that Defendant violated Plaintiff's First and Eighth Amendment rights when he conducted shakedowns of Plaintiff in retaliation for writing grievances. Plaintiff does not specify in his amended complaint what he means by the term "shakedown." His deposition testimony indicates that a shakedown is a search of his person. Specifically, he replied affirmatively when asked, "And when you are talking about shakedowns, you are referring to searches of yourself?" (Dkt. 35-1, p. 5.) It appeared from his testimony that this was distinct from the "trashing" of his property. (Id.) Plaintiff later asserted for the first time in his amended response to Defendant's motion for summary judgment that a shakedown would involve trashing his bed and locker, which contained all his personal property. (Dkt. 43, p. 2.)

However, as Defendant alleges, Plaintiff's vague assertions regarding the shakedowns are insufficient to demonstrate a constitutional violation. A claim of First Amendment retaliation does not warrant relief if a plaintiff is unable to demonstrate that an official undertook actions with a retaliatory intent to punish the plaintiff for exercising his First Amendment rights. Plaintiffs bringing § 1983 claims "must allege facts in support of their claims with some specificity." *Pittman v. Tucker*, 213 Fed.Appx. 867, 870 (11th Cir. 2007) (citing *Wilson v. Strong*, 156 F.3d 1131, 1135 (11th Cir. 1998)). Therefore, Plaintiff must show evidence that his protected speech of writing grievances was a substantial or motivating factor behind Defendant's actions. He must do so with more than conclusory or speculative allegations. *See Johnson*, 4 F.3d at 949.

Plaintiff has not made the necessary showing.  First, his amended complaint only provides a conclusory allegation that Defendant subjected him to shakedowns in retaliation for writing grievances.  He does not state with specificity what happened during the shakedowns, when they first started, when they subsequently took place, or how frequently they occurred.[8]  Most importantly, he does not point to any evidence signaling a retaliatory motive or intent on Defendant's part in conducting them.  Plaintiff's amended complaint does not contain or cite any direct evidence of retaliation.  As such, it does not support his claim with any facts.

Similarly, Plaintiff's other pleadings do not provide such evidence.  He states in his response to Defendant's motion for summary judgment that there is a genuine dispute in this case because several current and former correctional officers have first-hand knowledge of Defendant's retaliatory actions.  (Dkt. 40, pp. 1-2.)  Plaintiff's motion for summary judgment, as well as his response and amended response to Defendant's motion for summary judgment, refer to statements that Plaintiff attributes to Defendant and other correctional officers.  However, these alleged statements are unsubstantiated by any evidence and would fail to show that Defendant retaliated against him.

In his motion for summary judgment, Plaintiff restates the allegation contained in his June 6, 2011 grievance that Defendant "stated I had no idea who I was dealing with, that he had the power to do anything he pleases with me and that I will always lose to him."  (Dkt.

---

[8]Additionally, it is noted that prisoners have no Fourth Amendment protection against unreasonable search and seizure while incarcerated.  *Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).

30, p. 4.)  However, Plaintiff's deposition testimony reflects that he attributes this statement to Defendant at the time of the legal mail pass incident in 2010.  (Dkt. 35-1, p. 7.)  Plaintiff also testified that this statement was made when Defendant handcuffed him during a dispute over the legal mail pass.  (Id.)  This was prior to Plaintiff's initial June 11, 2010 grievance. It was also prior to his complaints of retaliatory shakedowns, which he did not raise until his May 20, 2011 grievance.  Therefore, because this statement was alleged to have been made by Defendant before any grievances were filed, it would not provide any evidence that shakedowns beginning at an unspecified point in the future were performed in retaliation for a grievance Plaintiff had not yet written.

Plaintiff also asserts that others had knowledge of retaliation.  He states in his amended response that another officer, Captain Comis, wanted him to drop a grievance and warned him that Defendant "is going to come at you."  (Dkt. 43, p. 3.)  Plaintiff reiterated this in his deposition testimony.  (Dkt. 35-1, p. 7.)  Similarly, Plaintiff contends in his amended response that correctional officer Weber could testify that Defendant "bragged" about harassing Plaintiff and trashing Plaintiff's belongings.  (Dkt. 43, p. 4.) Plaintiff testified that Weber encouraged him to take action because Defendant was "purposefully harassing" Plaintiff.  (Dkt. 35-1, p. 10.)  Finally, Plaintiff asserts in his amended response that two other officers, Tameka Smith and K. Freeman, were willing to provide statements that Defendant attempted to recruit them to assist in harassing Plaintiff, but that they refused to participate. (Dkt. 43, pp. 3-4.)   He asserts that Smith said that one of Plaintiff's complaints about

Defendant "described c/o Andre to the 'T'". (Id.)  Plaintiff also testified to these alleged statements. (Dkt. 35-1, pp. 13-14.)

These purported statements are not evidence of retaliation.  The parties were given the opportunity to develop the record; a scheduling order was entered in this case setting a discovery deadline.  While Plaintiff asserts that the correctional officers could have provided and in some cases were willing to provide statements or testimony, he did not present any such testimony or documentation.  His claims attributing these statements to others amount to unsubstantiated hearsay and are do not constitute evidence supporting his claim.

Furthermore, it is noted that even Plaintiff presented evidence of these statements, they would not indicate that Defendant acted with retaliatory intent.  Plaintiff's allegation that Comas provided a vague warning that Defendant would "come back" at Plaintiff does not suggest that Comas had first-hand knowledge about Defendant's actions or knew of actual retaliation against Plaintiff.  Similarly, Weber's alleged statements do not show that Defendant acted in retaliation.  Plaintiff also testified that Weber's statement was made at the time of his August 8, 2010 grievance, which did not allege shakedowns.  The purported statements of Smith and Freeman also fail to draw any connection between Plaintiff's grievances and the alleged shakedowns, and do not show retaliation.

Thus, Plaintiff does not demonstrate that Defendant acted in retaliation for Plaintiff filing grievances.  Further, he had neither asserted nor shown that Defendant's alleged actions would deter a person of ordinary firmness from exercising his First Amendment rights.  Summary judgment for Defendant is therefore appropriate, as Plaintiff has submitted

no evidence to support his belief that the shakedowns were in retaliation for the grievances he wrote.

The Court also finds that summary judgment for Defendant is proper to the extent Plaintiff asserts that the allegedly retaliatory shakedowns amounted to an Eighth Amendment violation.  As Defendant argues, Plaintiff's general allegations concerning the shakedowns cannot survive summary judgment.  Plaintiff does not assert with any detail or specifics in his pleadings how Defendant violated his Eighth Amendment rights through the shakedowns. While Plaintiff does not state what specific Eighth Amendment claim he alleges, his assertions concerning the shakedowns appear to fit most closely into the category of Eighth Amendment claims regarding specific conditions of confinement.

However, Plaintiff has not made the showing necessary to sustain such a claim. Plaintiff has not demonstrated "extreme deprivations" of his rights or that Defendant acted with "deliberate indifference" for Eighth Amendment purposes.  *Thomas*, 614 F.3d at 1304. He has neither asserted nor demonstrated that the shakedowns resulted in the wanton and unnecessary infliction of pain.  *See Hope*, 536 U.S. at 737.  Furthermore, while Plaintiff alleges that Defendant's actions caused him to experience sleep deprivation and weight loss, he does not claim that this amounted to the infliction of pain.[9]

It is therefore **ORDERED** that:

---

[9]Plaintiff failed to grieve the allegation in his § 1983 claim that Defendant's actions caused him to experience sleep deprivation and weight loss.  Even if this could be considered, Plaintiff's weight loss was addressed by ZCI personnel.  Attached to Plaintiff's Response to Defendant's Motion for Summary Judgment is a form signed by a ZCI doctor stating that Plaintiff was to be placed on a "4,000 calorie regulated diet" from August 12, 2010, to November 12, 2010.  (Dkt. 40-1, p. 2.) Plaintiff also testified at his deposition that, after he was placed on a "good diet," he regained the weight he had lost.  (Dkt. 35-1, p. 18.)

1.      Plaintiff's Motion for Summary Judgment (Dkt. 30) is denied.

2.      Defendant's Motion for Summary Judgment (Dkt. 35) is granted.

3.      Plaintiff's Amended Complaint (Dkt. 7) is dismissed without prejudice to the extent his claims were disposed of for failure to exhaust administrative remedies, and is dismissed with prejudice to the extent his claims were denied on the merits.

4.      The Clerk is directed to enter judgment for Defendant, close all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on May 30, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

ML:sa